Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 7386 | **DATE** | 1/26/2012 |
| **CASE TITLE** | John E. Taylor, Jr. (R66376) vs. Wexford Health Services, Inc., et al. | | |

**DOCKET ENTRY TEXT**

Plaintiff's motion for leave to proceed *in forma pauperis* (Dkt. No. 3), is granted. The Court authorizes and orders Plaintiff's trust fund custodian to deduct $21.16 from his account, and to continue making monthly deductions in accordance with this order. The clerk shall send a copy of this order to the Supervisor of Inmate Trust Fund Accounts at the Stateville Correctional Center. Plaintiff's motion for a copy of the complaint (Dkt. No. 4), is denied. Plaintiff may not bring an official capacity claim against Illinois Department of Correction employees for monetary relief claims. He may bring his injunctive relief claim to the extent that it permissible under *Ex Parte Young*, 209 U.S. 123 (1908). Plaintiff may proceed with an official capacity claim for monetary and injunctive relief against Wexford Health Services. He may also bring his individual capacity claims against the medical Defendants. Defendants Kevin Halloran, Allan Karraker, Cynthia Garcia, Antony Ramos, and Charles Fasano are dismissed. The current Warden of the Stateville Correctional Center, Marcus Hardy, is added in his official capacity for purposes of *Ex Parte Young*. The Clerk shall issue summonses for service on Defendants Warden Hardy, Wexford Health Services, Inc., Olson, Brown, Martin, Beattie, Rossiter, and Kris and send Plaintiff a Magistrate Judge Consent Form and Instructions for Submitting Documents along with a copy of this order. The United States Marshals Service is appointed to serve all Defendants. The clerk will provide Plaintiff with an amended civil rights complaint form and instructions along with a copy of this order

■[ For further details see text below.]   Docketing to mail notices.

## STATEMENT

    Pro se Plaintiff John E. Taylor, Jr, a prisoner at the Stateville Correctional Center, brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 alleging that he was denied the prescription medication Elavil at various times during his incarceration. Pending before the Court are Plaintiff's motion for leave to proceed *in forma pauperis* (Dkt. No. 3), and complaint for an initial screening pursuant to 28 U.S.C. § 1915A (Dkt. No. 1), and motion for a copy of the complaint. (Dkt. No. 4).

    Plaintiff's motion for leave to proceed *in forma pauperis* (Dkt. No. 3), is granted. Pursuant to 28 U.S.C. § 1915(b)(1), Plaintiff is assessed an initial partial filing fee of $21.16. The trust fund officer at Plaintiff's place of incarceration is directed to collect, when funds exist, the partial filing fee from Plaintiff's trust fund account and pay it directly to the Clerk of Court. After payment of the initial partial filing fee, Plaintiff's trust fund officer is authorized and ordered to collect monthly payments from Plaintiff's trust fund account in an amount equal to 20% of the preceding month's income credited to the account. Monthly payments collected from Plaintiff's trust fund account shall be forwarded to the Clerk of Court each time the amount in the account exceeds $10 until the full $350 filing fee is paid. All payments shall be sent to the Clerk, United States District Court, 219 S. Dearborn St., Chicago, Illinois 60604, attn: Cashier's Desk, 20th

| STATEMENT |
|---|

Floor, and shall clearly identify Plaintiff's name and this case number. The inmate trust account office shall notify transferee authorities of any outstanding balance in the event of Plaintiff's transfer to another correctional facility.

Turning to the initial review under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a suit brought *in forma pauperis* at any time if the Court determines that it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against Defendants who are immune from such relief. The following facts, drawn from Plaintiff's complaint (Dkt. No. 1), are accepted as true and all reasonable inferences are made in the light most favorable to Plaintiff. *Parish v. City of Elkhart*, 614 F.3d 677, 679 (7th Cir. 2010) (citing *Johnson v. Rivera*, 272 F.3d 519, 520 (7th Cir. 2001)). This Court also "construe[s] pro se complaints liberally and hold[s] them to a less stringent standard than formal pleadings drafted by lawyers." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (citing *Erickson v. Pardus*, 551 U.S 89, 94 (2007) (per curiam); *Obriecht v. Raemisch*, 417 F.3d 489, 492 n.2 (7th Cir. 2008)).

"To satisfy the notice-pleading standard, a complaint must provide a 'short and plain statement of the claim showing that the pleader is entitled to relief,' which is sufficient to provide Defendant with 'fair notice' of the claim and its basis." *Bridges*, 557 F.3d at 545 (quoting *Erickson*, 551 U.S at 89). "'[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The complaint must actually *suggest* that Plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level." *Bridges*, 557 F.3d at 546 (internal quotation marks and citations omitted) (emphasis in original).

On October 19, 2009, following an MRI examination, a neurologist at the University of Illinois Hospital in Chicago prescribed Elavil for Plaintiff's chronic neck, shoulder, back and hip pain. Elavil is an antidepressant but pain relief is an off label use of the drug. *Amitriptyline*, Wikipedia Entry, *available at* http://en.wikipedia.org/wiki/Amitriptyline (last visited on January 23, 2012). Plaintiff alleges that the Elavil helps his pain and allows him to sleep through the night.

Defendant Wexford Health Sources contracts with the State of Illinois to provide medical services at Stateville. Plaintiff immediately informed the doctors and nurses at Stateville of his new prescription for Elavil upon his return from Chicago in October 2009. The medical staff at Stateville put in the request for Elavil, but Plaintiff had to wait until mid February 2010 to receive the medication.

Plaintiff blames Wexford for this initial three and half month delay. Elavil is a non formulary medication under Wexford's policies governing Stateville. Consequently, the Stateville medical staff had to submit Plaintiff's prescription to Wexford staff at their headquarters in Pennsylvania for review and approval. This cost savings practice by Wexford displeases Plaintiff who points out that he already had the approval of the neurologist at the University of Illinois Hospital and the Wexford doctor at Stateville. The Stateville medical staff did provide Plaintiff other medication to address his pain before receiving the Elavil.

In addition to his claim regarding the initial delay in receiving Elavil at the beginning of 2010, Plaintiff also alleges that he had disruptions in receiving the drug in 2010. He states that he did not receive it on February 23, 2010 through February 28, 2010, March 1, 2010 through March 24, 2010, May 15 and 16, 2010, May 22, 2010 through May 31, 2010, June 1, 2010 through June 5, 2010, July 7, 2010, November 28, 2010 through November 30, 2010, January 30 and 31, 2011, and March 16, 2011. Plaintiff

believes that he did not receive his medications at times because nurses at Stateville failed to deliver his medication or complete necessary forms, at other times the pharmacy at Stateville failed to keep an appropriate amount on site, and other times the pharmacy could not reorder due to Wexford's cost saving policy that delayed reordering. Plaintiff alleges that he complained about the original delay to get the Elavil as well as these disruptions through in person communications with doctors, nurses and correctional officials at Stateville, letters to Wexford executives, and written grievances. He names as Defendants Wexford, and its executives, the Stateville nurses (along with their supervisors), medical technicians and the pharmacist involved in his care, and his grievance counselor, warden and regional IDOC health official. Plaintiff believes that each Defendant is individually involved with the alleged constitutional violation because they either denied him his prescribed Elavil or turned a blind eye to his numerous requests regarding the denial of Elavil. He also sues all Defendants in their official capacity. He seeks monetary relief for his past injuries and injunctive relief ensuring that his medication is provided in a timely fashion.

Prisoners have a constitutional right to a minimal level of medical care. *Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010) (citing *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006)). A deliberate indifference to an objectively serious medical need claim requires: (1) an objectively serious medical need; and (2) Defendants were deliberately indifferent to Plaintiff's medical needs. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

Plaintiff meets the first element of the standard of having an objectively serious medical condition. "An objectively serious medical condition is one that 'has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention.'" *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (quoting *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008)). "A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton*, 593 F.3d at 620 (citing *Reed v. McBride*, 178 F.3d 849, 852 (7th Cir. 1999)). Here, Plaintiff's pain was diagnosed by, and associated prescription for Elavil was provided by, his neurologist at the University of Illinois Hospital and his doctor at Stateville.

As to the second requirement of subjective deliberate indifference, Plaintiff must allege that Defendants were intentionally indifferent to an objectively serious medical need or condition — negligence, gross negligence or medical malpractice is insufficient. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008); *Guzman v. Sheahan*, 495 F.3d 852, 857 (7th Cir. 2007); *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007). "A delay in treatment may constitute deliberate indifference [in violation of the Constitution] if the delay exacerbated an injury or unnecessarily prolonged an inmate's pain." *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) (citations omitted). Thus, Plaintiff's allegation that he was wrongfully denied medication resulting in unnecessary pain can state a claim for deliberate indifference. The Court must therefore examine which of the fourteen Defendants Plaintiff may bring a deliberate indifference claim against.

Plaintiff sues all Defendants in their individual and official capacity. A suit against an individual in his or her official capacity is, in actuality, a suit against his or her employer. *Minix v. Canarecci*, 597 F.3d 824, 830 (7th Cir. 2010). There are two entities involved, the Illinois Department of Corrections (IDOC) and Wexford Health Services.

By suing a number of IDOC employees in their official capacity, Plaintiff is suing the IDOC, an in turn, the State of Illinois. Illinois cannot be sued for monetary relief as Plaintiff seeks because it is neither a person for § 1983 purposes and is also shielded for purpose of sovereign immunity, but a suit for injunctive

| STATEMENT |
|---|

relief pursuant to *Ex Parte Young*, 209 U.S. 123 (1908), is allowed. *Ryan v. Illinois Dep't of Children and Family Servs.*, 185 F.3d 751, 758 (7th Cir. 1999) (citations omitted).

As to Wexford, Plaintiff's claim is evaluated under the standard of *Monell v. New York City Dep't Soc. Servs.*, 436 U.S. 658 (1978). *Gayton v. McCoy*, 593 F.3d 610, 622 (7th Cir. 2010). (Wexford qualifies as a state actor for Section 1983 purposes because it is performing a governmental function that was delegated to it by the IDOC, *Wade v. Byles*, 83 F.3d 902, 905 (7th Cir. 1996), but it is not considered an arm of the State of Illinois for sovereign immunity and Section 1983 purposes because it is legally a separate entity from the State and would required to pay any judgments on its own. *Burrs v. State Lottery Comm'n of Ind.*, 546 F.3d 417, 420 (7th Cir. 2008)).

To establish a *Monell* claim against Wexford, Plaintiff must allege that his injuries were caused by Wexford's custom, policy or practice. *Waters v. City of Chicago*, 580 F.3d 575, 580 (7th Cir. 2009) (citing 436 U.S. 658 (1978)). "To establish an official policy or custom, Plaintiff must show that his constitutional injury was caused by (1) the enforcement of an express policy of [Wexford], (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policymaking authority." *Wragg v. Vill. of Thornton*, 604 F.3d 464, 467-68 (7th Cir. 2007) (citing *Latuszkin v. City of Chicago*, 250 F.3d 502, 504 (7th Cir. 2001); *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000)). Plaintiff meets this standard because he alleges that he was harmed by Wexford's express policy of failing to provide him medication in timely fashion because of the home office approval requirement.

Plaintiff claims that Wexford's policy of requiring pre-approval for the Elavil resulted in unnecessary pain in violation of the Constitution. He believes that he should not have had to wait between November 4, 2009 and February 11, 2010 to receive the initial prescription. (Dkt. No. 1 at 12). He also suggests that Wexford caused additional delays when he required prescription renewals because the renewals also had to be reviewed by Wexford's home office.

Although it is a close question, the Court concludes that Plaintiff has stated a claim against Wexford and may proceed with his complaint. Plaintiff was prescribed an antidepressant for the off label usage of addressing his chronic pain. This is a non formulary drug requiring Wexford approval.

Wexford's policy of requiring prior approval from its corporate headquarters can be argued to be a reasonable cost requirement and certainly far from the egregious conduct required to show deliberate indifference. The Constitution "does not require that prisoners receive unqualified access to health care," but rather "they are entitled to only adequate medical care." *Johnson*, 433 F.3d at 1013 (internal quotation marks and citations omitted). The cost of treatment may be considered when evaluating whether alternative treatments are Constitutionally adequate. *Berry*, 604 F.3d at 441. Mere disagreement with a course of treatment is insufficient because "'the Constitution is not a medical code that mandates specific medical treatment.'" *Johnson*, 433 F.3d at 1014 (citing *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)).

However, the question is why it took so long for Plaintiff to receive his medication, and this question cannot be answered at the initial review / motion to dismiss stage of the proceedings. Instead, the Court must read the complaint in Plaintiff's favor and when doing so there is a claim as to the unnecessary delay of providing him his medication. The Court understands that additional time must be taken to review the prescription for cost purposes, but whether that policy results in deliberate indifference is a question that cannot be determined at this stage in the litigation.

| STATEMENT |
|---|

The Court next turns to the non medical officials. Plaintiff alleges that he wrote letters and grievance to these Wexford and IDOC officials to address his situation but to no avail. The named Defendants are President of Wexford Health Services Kevin Halloran, Wexford Regional Administrator Allan Karraker, Stateville Grievance Counselor Cynthia Garcia, Stateville Warden Antony Ramos, and IDOC Regional Health Director Charles Fasano.

Plaintiff cannot proceed with a claim against these individuals in their individual capacities. A non medical official may be held liable under the deliberate indifference standard for ignoring a prisoner's letters or grievances complaining about mistreatment. *Santiago v. Walls*, 599 F.3d 749, 758-59 (7th Cir. 2010). However, a prison has the right to divide tasks among officials and a prisoner cannot demand that one employee intervenes on his behalf when a task is being addressed by a second employee. *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). This principle is based on the fact that the deliberate indifference standard is a very difficult one to meet, it is beyond mere negligence. *Id.* Consequently, like in this situation, when a prisoner is under the care of medical officials, the non medical officials may defer to the judgments of those individuals. *Id.* That is what occurred in this case according to the complaint and grievances attached to the complaint. Plaintiff's complaints were investigated and he was informed that the medical officials were working to obtain his medicine or he already had his medicine once the grievance was answered. This is all that was required of the non medical officials.

This leaves the remaining medical official defendants of Wendy Foxon Olson, Royce Reed Brown, Ester Marin, Regina Beattie, Athenia Rossiter, Nurse Kris and Night Shift Nurses. These individuals all allegedly had personal responsibility for either obtaining and/or distributing Plaintiff's medication and they failed to do so in a timely fashion resulting in unnecessary infliction of pain. Plaintiff may proceed against these defendants in their individual capacity.

Plaintiff should be aware that he cannot proceed against an unnamed Defendant. Here he names "Night Shift Nurses." He must identify these Defendants by their actual names. Once an attorney has entered an appearance on Wexford Health Service's behalf, Plaintiff may send defense counsel interrogatories (that is, a list of questions) eliciting information regarding the identity of the unnamed nurses who allegedly violated his constitutional rights. *See* Fed. R. Civ. P. 33. After he learns their identities, he may submit a proposed amended complaint that names the nurse Defendants under their actual names. Summonses will then issue for service on these defendants. Plaintiff is advised that there is a two year statute of limitations for his claims. *Jenkins v. Vill. of Maywood*, 506 F.3d 622, 623 (7th Cir. 2007). Plaintiff must submit a proposed amended complaint naming the identity of all unknown Defendants within the statute of limitations period if he wishes to proceed against him. *Jackson v. Kotter*, 541 F.3d 688, 696 (7th Cir. 2008); *Klebanowski v. Sheahan*, 540 F.3d 633, 639 (7th Cir. 2008); *Worthington v. Wilson*, 8 F.3d 1253, 1257 (7th Cir. 1993).

Should Plaintiff decide to submit a proposed amended complaint, he must write both the case number and the Judge's name on the proposed amended complaint, sign it, and return it to the Prisoner Correspondent. As with every document filed with the Court, Plaintiff must provide an extra copy for the Judge; he must also submit a service copy for each Defendant named in the proposed amended complaint. Plaintiff is cautioned that an amended pleading supersedes the original complaint and must stand complete on its own. Therefore, all allegations against all Defendants must be set forth in the proposed amended complaint, without reference to the original complaint. Any exhibits Plaintiff wants the Court to consider in its threshold review of the proposed amended complaint must be attached, and each copy of the proposed amended complaint must include complete copies of any and all exhibits. Plaintiff is advised to keep a copy for his files. The clerk will provide Plaintiff with an amended civil rights complaint form and instructions

| STATEMENT |
|---|

along with a copy of this order.

       Plaintiff is also admonished that he may only proceed against Defendants who were personally liable for the alleged constitutional violations. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("[P]laintiff must plead that each government official defendant, through the official's own individual actions, has violated the Constitution."). The Court is allowing Plaintiff to proceed against all named medical Defendants because he has plausibly alleged that they were responsible for the unconstitutional situation. However, Plaintiff would be wise to investigate this issue further through discovery. The fact that an individual is a supervisor is not by itself sufficient to make him liable for an unconstitutional event.

       In summary, Plaintiff may not bring an official capacity claim against Illinois Department of Correction employees for monetary relief claims. He may bring his injunctive relief claim to the extent that it permissible under *Ex Parte Young*, 209 U.S. 123 (1908). Plaintiff may proceed with an official capacity claim for monetary and injunctive relief against Wexford Health Services. He may also bring his individual capacity claims against the medical Defendants. Defendants Kevin Halloran, Allan Karraker, Cynthia Garcia, Antony Ramos, and Charles Fasano are dismissed. The current Warden of the Stateville Correctional Center, Marcus Hardy, is added in his official capacity for purposes of *Ex Parte Young*. The Clerk shall issue summonses for service on Defendants Warden Hardy, Wexford Health Services, Inc., Olson, Brown, Martin, Beattie, Rossiter, and Kris and send Plaintiff a Magistrate Judge Consent Form and Instructions for Submitting Documents along with a copy of this order. The United States Marshals Service is appointed to serve all Defendants. Any service forms necessary for Plaintiff to complete will be sent by the Marshal as appropriate to serve Defendants with process. The U.S. Marshal is directed to make all reasonable efforts to serve Defendants. With respect to any former employees who no longer can be found at the work address provided by Plaintiff, Wexford Health Services and/or the Illinois Department of Corrections furnish the Marshal with Defendant's last-known address. The information shall be used only for purposes of effectuating service [or for proof of service, should a dispute arise] and any documentation of the address shall be retained only by the Marshal. Address information shall not be maintained in the court file, nor disclosed by the Marshal. Plaintiff is to provide the U.S. Marshals Service with a copy of the complaint and a proper form for request of waiver pursuant to Federal Rule of Civil Procedure 4(d)(1). The U.S. Marshals Service is requested to mail the complaint and appropriate papers for waiver of service by first-class mail to the named Defendants pursuant to Rule 4(d)(1)(G)

       Plaintiff is instructed to file all future papers concerning this action with the Clerk of Court in care of the Prisoner Correspondent. Plaintiff must provide the Court with the original plus a complete Judge's copy, including any exhibits, of every document filed. In addition, plaintiff must send an exact copy of any court filing to Defendants [or to defense counsel, once an attorney has entered an appearance on behalf of defendants]. Every document filed with the Court must include a certificate of service stating to whom exact copies were mailed and the date of mailing. Any paper that is sent directly to the Judge or that otherwise fails to comply with these instructions may be disregarded by the Court or returned to Plaintiff.

       Plaintiff's motion for a copy of the complaint (Dkt. No. 4), is denied. It is his responsibility to keep a copy of all documents filed with the Court. Plaintiff may contact the Clerk for a copy of any document but must pay the appropriate fee for the copy. Plaintiff's IFP status does not entitle him to free copies of documents from the Court.